ELLIS, Judge.
The original demand herein was brought by the plaintiff as the. intended beneficiary on a life insurance policy for the sum of $2,000 and the petition asks for'penalties, interest and costs. An exception of no-cause or right of action was filed and sustained by the trial court in view of 'the fact that the petition affirmatively disclosed that no policy'had ever been isbued, and further, that a provision in the receipt' issued to the insured to the effect that the contract of insurance would not be in force until the policy had been issued and delivered to the applicant. 1 The ruling of the trial court dismissed the main 'demand of the plaintiff, but since, subsequent to the filing of the exception; thqi plaintiff filed a supplemental and aménded' petitión setting forth an alternative demand for damages, this last demand was not affected by this ruling, and the case was tried, after answer was filed, on the question of damages resulting from the failure of' the defendant to have' the policy issued or to have informed the applicant that it would ■ not be issued so that another might be obtained.
The trial Court rendered judgment in favor of the plaintiff allowing the recovery of $1,000 damages, together with costs. •
From this judgment the defendant has appealed.
Miss Geraldine Owens, the minor sister of the plaintiff, applied to the defendant through its agent, for a contract of life insurance. This applicant lived with the plaintiff at her home, and when the application was completed the agent of the defendant detached from the application and gave to Miss Owens a cash receipt which reads as follows:
“Official Receipt for Applicant
“Preferred Life Assurance Society
“Preferred Life Building, Montgomery Alabama
“Received of Geraldine Owens of Baton Rouge State La. Thirty-Two & 72/100 Dollars $32.72 to apply as Membership Fee, Investigation and Medical Fee and First annual dues, this day made, subject to the following conditions :
First: The insurance contract shall not be in force until the contract applied for shall have been delivered to the applicant - while he is in sound health. •, .
“Second; .If the.Preferred Life Assurance Society declines to issue the contract applied for, the sum paid shall be returned 'to the applicant or legal representative.
“Third: This form of receipt ■ is'issued by the Preferred Life Assurance Society and any change in the printed terms or conditions of this receipt or its use for any but the first payment on the proposed insurance will render it • void.
“Dated at-(sgd) A. D. Merchant —State Mgr. Organizer
“This 27 day of June 1951
“Guaranteed position #1 to 12 or refund money”
*787 The contract was never issued nor was the notice of rejection Of the application ever given to the deceased. This application was made and the receipt given on June 27, 1951. On June 25, 1952 Miss Owens was killed in a traffic accident.
The plaintiff, who retained the receipt, contends that the Insurance Company, having accepted the application and issued a receipt for a full annual premium was under an obligation to either issue the policy or to inform the deceased of the rejection of her application; that it was the duty of the defendant to act upon the application, either accept it or reject it in a reasonable time, and that its failure to do so was negligence, for which the defendant is liable.
In its answer the defendant denied that any money whatsoever was paid to the agent of the insurer; that the receipt was issued in error, and as it was unable to complete an investigation, and because of nonpayment of the premium no policy wás ever issued.
The plaintiff objected to any evidence tending to vary, contradict or alter the written receipt so as to show that in truth and in fact the consideration for the contract of insurance, viz., the premium, was not paid. The testimony was properly admitted as the objection was not good, as the want or subsequent failure of consideration may be shown by parol. Such testimony is also admissible as it affects the question of the negligence of the deceased in her failure to inquire or investigate as to why she did not receive the policy.
The testimony offered on behalf of the defendant establishes the fact that the deceased applicant never paid the premium. This is shown by the testimony of the agent and his wife which is clear and convincing, and it is also shown that the defendant company received no premium but had charged the agent with same.
It was also shown that the agent of the defendant company who issued the receipt, supra, made repeated efforts to locate and contact the applicant, now deceased, by making a number of visits to her only known residence which was also the plaintiff’s home. She was never there and, in fact, the plaintiff’s testimony leads one to believe that the latter did not know where she was. It is shown that her mother lived in Houston, Texas but that she had been in a number of other states, apparently visiting. It is also shown that the plaintiff herein was contacted and told orally of the non-acceptance of the application, the nonpayment of -the premium and informed that the policy, would not be issued. It is true that there .was no registered letter ever sent the deceased applicant but it would appear that personal search and visits to the only residence or address known to. the agent in an effort to locate her and notify her personally of the status of her application was a more thorough or effective means. Further, there is no showing that had a registered letter been sent that she would ever have received it, for plaintiff offered no testimony that the deceased applicant ever returned to plaintiff’s home.
Thomas v. Life Ins. Co. of Georgia, 219 La. 1099, 55 So.2d 705, at page 706, 32 A.L.R.2d 483, sets forth the doctrine upon which recovery is allowed in such cases as this. This rule was enunciated in Harding v. Metropolitan Life Insurance Co., La.App., 188 So. 177, and is stated in the Thomas case as follows:
“ * * * that since an unreasonable delay and the retention of an unearned premium might deprive an insurable applicant of an opportunity to apply elsewhere for and to procure life insurance, there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing the duty of acting on the application within a reasonable time if, by such .delay, an insurable applicant is prevented from procuring insurance, thus causing a loss.”
The Harding case, supra [188 So. 182], stated that what is a “reasonable period” within which to investigate and to act upon an application for a life policy depends up *788 on the facts in each case. And in the Harding case we find this language:
“But when that reasonable period expires — and what is a reasonable period must depend upon the facts in each case — and it fails to communicate its rejection to the applicant and also fails to return the amount conditionally paid with the application, surely the applicant, for a time at least, may assume that his application has been accepted and that shortly his policy will make its appearance. Just how long he may rely upon this assumption is a matter which also must be determined by the facts of each case. An ignorant laborer, having no knowledge of the insurance business, may, for a considerable time, assume, from the retention of his premium and the failure to communicate rejection of his application, that the application has been approved and that the policy will be forthcoming. We recognize, of course, that sooner or later, if no policy is received, the applicant may be under the duty to inquire and to investigate to ascertain why he has not received it, and, after the lapse of too long a time, it may be that it would be proper to say that his own failure to investigate should be held to be negligence on his part. But, as we have said, if the company retains his money and fails to advise him that it has rejected the application, he may, for a reasonable period, rely upon those facts, and, acting upon that reliance, fail to attempt to place his insurance elsewhere. If he does so rely and a loss occurs, it may properly be said that the fact that he has made no other attempt to secure insurance is properly chargeable to the negligence of the company in failing to communicate to him the facts which — had he known them — would have prompted him to secure insurance elsewhere.”-
The Harding case quotes the principle upon which recovery is allowed in tort in such cases as this, which quotation is taken from Strand v. Bankers’ Life Ins. Co., 115 Neb. 357, 213 N.W. 349, 351:
“The conclusion therefore is that there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing such a duty, if it prevents an insurable applicant from procuring a policy which he would otherwise have received thus causing a loss.”
The plaintiff in this case, as well as in any other, must bear the burden of proof, and there is no showing here that the plaintiff suffered any damage as a result of any negligence on the part of the defendant.
The defendant offered in testimony a letter written to the agent who issued the application requesting some information as to the medical report and address of the applicant. On the bottom of this letter, which was returned by the agent, he wrote “please cancel, paid nothing.”
Thus, we have a situation here where no premium was paid when the application was made, and apparently none ever was paid. Of course, had any payment been made the defendant would have been under an obligation to return the premium if no policy had been issued, and this return and notification must have been within a reasonable time. The Harding case stated that an applicant for a reasonable time could assume that his application had been accepted and he would expect within a short time that a policy be sent him. This case, also stated that sooner or later if no policy was received, the applicant himself would be under a duty to inquire and to learn why the policy had -not been received, and after too long a time it would be reasonable to say that his own failure to investigate would constitute negligence. In other words, an applicant himself can be guilty of laches.
Here the applicant as well as the plaintiff, after a period of nearly one year knew or should have known, never having received a policy, that the application was rejected. Neither could she have been said to have relied upon the issuance of the policy to such an extent as to refrain from *789 applying for further insurance. A reasonable time having elapsed, the applicant was charged with a duty to investigate, and her failure to do so convicts her of negligence. There is no proof that she relied upon this application for such a long period of time, and the plaintiff herself was placed upon notice by repeated oral communications with the agent of the company.
The judgment of the District Court is reversed and plaintiff’s suit dismissed at her cost.